**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

| | |
|---|---|
| PATRICIA KOPIT<br><br>Plaintiff,<br><br>vs.<br><br>GEOFFREY WHITE, individually and on behalf of the Law Offices of White & Meany; O'QUINN, MCANINCH & LAMINACK; et. al.,<br><br>Defendants. | 3:01-CV-00037-ECR-VPC<br><br>**ORDER** |

**I. Procedural Background** [1]

On March 30, 2001, Plaintiff Patricia Kopit ("Plaintiff" or "Kopit") filed an Amended Complaint (#5) against Defendants Geoffrey White and White & Meany ("Defendants" or "White") alleging claims of professional negligence,[2] breach of fiduciary duty,

---

[1] Plaintiff Kopit appealed our previous order granting summary judgment to Defendants. We had held that Kopit's claims were barred by Nevada statute of limitations specific to the legal malpractice claim. The Ninth Circuit, in No. 03-16210, reversed and remanded the action finding that the statute of limitations did not bar Plaintiff's Nevada legal malpractice claim against Defendants.

[2] An action for professional negligence is an action for legal malpractice. Kracht v. Perrin, Gartland & Doyle, 219 Cal. App. 3d 1019, 268 Cal. Rptr. 637, 639 (Cal. Ct. App. 1990).

deceit, and fraud.[3] On August 29, 2005, Plaintiff filed a Motion for Summary Judgment (#114). On September 15, 2005, Defendants filed a response (#118) and Plaintiff replied (#123) on September 29, 2005.

At the same time, Defendants filed a Motion for Summary Judgment (#115) on August 31, 2005. Plaintiff filed a response (#119) on September 21, 2005 and Defendants replied (#125) on October 5, 2005. The motions are now ripe and we will now rule on them.

For the reasons stated below, both Plaintiff's and Defendants' motions will be **denied**, except that Plaintiff's Motion for Summary Judgment concerning the defense of assumption of the risk will be **granted.**

## II. Statement of Facts

Kopit is a licensed California attorney.

Kopit received her first set of silicone gel breast implants in 1966 by Dr. Alexander ("1966 pair"). In 1973, Kopit decided to have the 1966 pair removed as breakthroughs in technology had made newer silicone gel breast implants softer and more natural feeling ("1973 pair").

In 1979, Plaintiff again heard about breakthroughs in technology that made newer implants feel more natural and received

---

[3] The reasoning from our previous order regarding the overlap of Plaintiff's claims relating to negligence, two claims of fraud and legal malpractice, is still good law as applied to the case and we choose to adopt it at this time. We find, therefore, since the claims of negligence and fraud are equivalent to a claim of legal malpractice, Plaintiff has essentially sued for legal malpractice and that is the only basis of liability on the part of Defendants remaining to be reviewed at this point.

her third pair of silicone gel breast implants ("1979 pair"). After surgery, Kopit developed a hematoma in her right breast. A drainage tube was inserted for a week to drain the fluid.

About eight or nine months later, Kopit noticed a small bump by the incision line where the tube in her right breast had been placed. Kopit consulted with Dr. Alexander who informed her that the drainage tube might have caused the right implant to rupture.

Dr. Alexander then replaced the implants in April 1980 ("1980 pair one") and found that indeed the right implant had ruptured. He did not find any migrated silicone at this point.

After the 1980 pair one was put in, Kopit developed an infection in the right breast. She took antibiotics for a short time and the infection cleared up. Dr. Alexander had advised Kopit to massage the breast to prevent a firm capsule from forming. However, Kopit over-massaged the breasts causing them to become inflamed and very painful. Kopit consulted with Dr. Dennis Nigro who recommended that she stop massaging and that she take antibiotics as she had possibly contracted an infection. Kopit was not pleased with the 1980 pair one as she found them to be too firm. She consulted with Dr. Nigro who informed her that he could put in another pair under the breast muscle which might prevent future firmness. Kopit decided to follow Nigro's advice and in August 1980, she had a fifth pair ("1980 pair two") put in.

There were no medical complications following the insertion of the 1980 pair two but Kopit believed that the size of the implants was too large. In 1984, Kopit decided to exchange the 1980 pair two for a sixth and smaller pair ("1984 pair").

In 1992, Kopit went to see Dr. Weiner complaining of chest pains and breathing difficulties. Dr. Weiner advised her that her medical complications could be due to her silicone gel breast implants and suggested that she get an MRI to determine whether there were further complications. Another doctor, Dr. Shaw, also conjectured that her breast implants were, in fact, defective. The MRI confirmed Dr. Weiner and Dr. Shaw's suspicions – Kopit had migrated silicone in various parts of her body.

Dr. Shaw removed the migrated silicone from her pectoral muscles, rib tissue, and breast tissue. He attempted to suspend the chest wall that had been depressed by the implants. A few years later, Dr. Shaw removed more silicone from her collarbone.

In 1995, Kopit had further surgery related to the migrated silicone. An MRI and ultrasound in 1995 revealed that migrated silicone had reached her lymph nodes and the brachial plexus area. Dr. Feng removed the lymph nodes which contained the silicone.

Plaintiff filed a breast implant suit against 3M in California in August 1992. In 1994, a stay was imposed on all implant suits nationwide for a federal class action suit. While Kopit was still in the federal class action, her first attorney withdrew because of a conflict of interest.

In December 1995, Kopit attended a local breast implant support group meeting in California where Defendant White was speaking. At the presentation, he stated that he could take 3M implant cases to file in Nevada. Kopit decided to retain White and his law firm in March, 14, 1996, to file a claim in Nevada against 3M and she signed a retainer agreement with White & Meany. On May

13, 1996, Kopit signed a document entitled "Explanation of Benefits and Damages Being Sought for Women Opting Out of the Manufacturers' Revised Settlement 'Offer' and Informed Consent Regarding Risks of Opting-Out." In this document, Kopit attested that she had been informed of risks of opting out of the class action including: "A Risk of Dismissal of Some or All of My Claims Because of the Statute of Limitations."

White filed a claim in Nevada state court in Reno about April 12, 1996, which was grouped with the claims of thirty other co-plaintiffs. At the same time, White opted Kopit out of the federal class action suit. In October 1996, Kopit, acting *pro per*, voluntarily dismissed her first California action.

On April 23, 1998, White wrote Kopit a letter explaining, among other things, that 3M was seeking to have her Nevada case dismissed for *forum non conveniens*. White explained that while the Nevada state Judge in her case had previously allowed a California plaintiff with minimal contacts to the state of Nevada to remain in Nevada class action suits, this Judge had recently reversed her decision in a different case and had dismissed a non-Nevada resident from a class action suit. White further informed Kopit that the Nevada Supreme Court had upheld this Judge's decision to dismiss the non-Nevada plaintiff.

White explained that, because it was almost certain that Kopit's case would be dismissed for *forum non conveniens*, he was working to enter into a stipulation with the most favorable terms possible for her case. He further explained that she would need to

re-file her case in the state in which she had the most contacts. We presume that state was California.

The Stipulation that White signed provided that plaintiffs, who had not filed actions in other courts previously, would receive tolling of the statute of limitations. The Stipulation did not provide that 3M would waive its statute of limitations defense for those plaintiffs who had previously filed actions in other courts.

Because Kopit had previously filed a case in California, and because the Stipulation did not toll the statute of limitations for those plaintiffs who had previously filed actions in other courts, Kopit could not pursue her California case any further against 3M and was left with no remedy for her injuries.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. Northwest Motorcycle Ass'n v. U.S. Department of Agriculture, 18 F.3d 1468, 1471 (9th Cir. 1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed. R. Civ. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be

granted. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form--namely, depositions, admissions, interrogatory answers, and affidavits--only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c); Beyene v. Coleman Security Services, Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. Anderson, 477 U.S. at 248. Summary Judgement is not proper if material factual issues exist for trial. B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir. 1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson,

477 U.S. at 248. Disputes over irrelevant or unnecessary facts should not be considered. Id. Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. Id.

**B. Legal Malpractice**

In order to support a claim for legal malpractice, Plaintiff must show: (1) an attorney-client relationship, (2) a duty owed to the client by the attorney, (3) a breach of that duty, and (4) the breach was the proximate cause of the client's damages. Semenza v. Nevada Medical Liab. Ins. Co., 104 Nev. 666, 667, 765 P.2d 184 (1988) (citations omitted). In order to establish damages in a litigation legal malpractice claim, Plaintiff must demonstrate that she had a viable claim that was dismissed because of Defendants' actions. Day v. Zubel, 112 Nev. 972, 976-77, 922 P.2d 536 (1996). In order to recover those damages, Plaintiff must still prove her "case within a case," i.e., her entitlement to damages from 3M. Merenda v. Superior Court, 3 Cal. App. 4th 1, 12-13, 4 Cal. Rptr. 2d 87 (1992)(disapproved on other grounds); Orrick Herrington & Sutcliffe v. Superior Court, 107 Cal. App. 4th 1052, 1057, 132 Cal. Rptr. 2d 658 (2003)("it is quite clear that when the malpractice involves negligence in the prosecution or defense of a legal claim, the case-within-a-case method is appropriately employed.")(internal citations omitted).

Plaintiff and Defendants dispute both the breach of duty of case owed to Plaintiff as well as the fact that Plaintiff would have won her underlying breast implant litigation had it been allowed to proceed in California.

**1. Breach of Duty of Care**

Expert testimony is required in a legal malpractice case unless the breach of duty of care is obvious. Peterson v. Gentile, 1997 U.S. App. LEXIS 30806 at *2 (9th Cir. 1997)(citing Allyn v. McDonald, 112 Nev. 68, 910 P.2d 263, 266 (1996).

Here, both Plaintiff and Defendants' evidence proves that there is a genuine issue of material fact as to whether Defendants breached their duty of care. Plaintiff has submitted the opinions of William M. Balin, a California attorney, who has averred that Defendants breached their duty of care in handling Plaintiff's case. This testimony creates a genuine issue of material fact and both Plaintiff's and Defendants' motions concerning breach of duty of care will therefore be denied.

**2. Damages**

White claims that he is entitled to summary judgment on the legal malpractice claims as Kopit would have lost her litigation claim in California, if it had not been dismissed on statute of limitations grounds, for several reasons.

First, White claims that Kopit discovered that her silicone gel breast implant in her right breast had ruptured in 1980 when it was removed. This rupture allowed silicone gel to migrate into her breast. White claims that the statute of limitations on her breast implant claim then began to run from April 1980 until 1981 and,

therefore, her breast implant claim would have been barred by the statute of limitations in 1998, when she refiled in California.

We find that although it is true that California did, at that time, have a one-year statute of limitations, see Cal. Code Civ. Proc §340(3), in order for the statute to begin to run, Plaintiff must have known about the defective nature of the silicone gel breast implants. Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1112, 245 Cal. Rptr. 658 (1988). Plaintiff has provided sufficient basis for a genuine issue of material fact as to whether she knew or had reason to know about the negative effects of rupture and the migrated silicone (the defective nature of the implants) until 1992 when she saw Dr. Shaw and Dr. Weiner about other medical complications. Although Plaintiff denies it in her declaration, Kopit testified in her deposition that she knew the implant had ruptured in 1980 but she did not know that it had done any damage to her body. Since there is a genuine issue of material fact as to when the Plaintiff knew or should have known about the negative effects of the rupture of the silicone gel breast implant, it would be improper to grant summary judgment for the Defendants on the basis that the statute of limitations would have barred her claims in California.

Defendants' second argument as to why Plaintiff's claim in California state court would have failed is premised on the fact that Plaintiff consented to any future harm when she replaced the 1980 pair two in 1984 with new silicone gel breast implants. Defendants cite Gomes v. Byrne for the claim that when a person has knowledge and appreciation of a danger involved in future conduct

and the person voluntarily assumes the risk of injury, the person has consented to this future harm and the defendant has a defense of assumption of the risk. 51 Cal. 2d 418, 333 P.2d 754 (1959).

We find that Plaintiff has provided sufficient basis for genuine issue of material fact on this premise as well. Plaintiff claims that she was (a) unaware of any future risk that she might suffer and (b) would never consent to being harmed by her breast implants. Indeed, Plaintiff decided to remove her breast implants immediately and permanently in 1992 when she found the damage that they had done to her upper body. Such evidence is sufficient to refute Defendants' argument as to consent to future harm and to provide a genuine issue of material fact to survive summary judgment on this claim.

**C. Defense: Assumption of Risk of Denial on the Grounds of Statute of Limitations by Kopit**

Defendants claim that they are entitled to the defense of assumption of the risk as Plaintiff assumed the risk that her claims would be dismissed due to statute of limitations in the document entitled: "Explanation of Benefits and Damages Being Sought for Women Opting Out of the Manufacturers' Revised Settlement 'Offer' and Informed Consent Regarding Risks of Opting Out," which Kopit signed on May 13, 1996. Defendants claim that the Nevada Supreme Court has held that "a contractual undertaking that expressly relieves a putative defendant from any duty of care to the injured party; such a party has consented to bear the consequences of a voluntary exposure to a known risk." Mizushima v. Sunset Ranch, Inc., 103 Nev. 259, 262, 737 P.2d 1158 (1987).

Defendants' argument is essentially that in signing the Retainer Agreement which expressly disclosed the risks of opting out, Kopit assumed the risk that Defendant White's actions might cause her breast implant claims to be dismissed pursuant to the statute of limitations.

We find that the risks that Plaintiff assumed relate expressly and only to Defendant White's behavior concerning dismissal of her *Nevada* state action.[4] Plaintiff's claim of legal malpractice relates to her *California* action being barred by the statute of limitations because Defendants failed to toll the statute of limitations in California in the Stipulation White signed for Kopit. Because Kopit only assumed the risk that her Nevada action might be dismissed because of the statute of limitations, Defendants' defense is meritless and cannot be used in defense of Plaintiff's claim of legal malpractice. Defendants will, therefore, not be permitted to defend on the basis of assumption of this risk because of the Retainer Agreement.

**D. Defense: Contributory Negligence by Kopit**

Defendants have presented sufficient evidence to show that there is a genuine issue of material fact as to whether Plaintiff committed contributory negligence. Kopit was a California lawyer who had the ability to discern the implications of the law in California and in Nevada concerning her case. In addition, Kopit

---

[4]Indeed, although information is included in a footnote regarding the applicable statute of limitations in California, such a disclosure is made to inform those plaintiffs that if California law is applied *in their Nevada state action*, the applicable statute of limitations is one year and not two years.

was the one who voluntarily, in *pro per*, dismissed her California action. Plaintiff was also informed in a letter White sent her detailing the progression of her case, that she would need to refile her case in the state in which she had the most contacts. All these circumstances together could have given Kopit notice that if her Nevada claims were dismissed, she might be barred in California by the statute of limitations. Therefore, Plaintiff's Motion for Summary Judgment on this ground will be denied and Defendants will be able to present this defense at trial.

**IV. Conclusion**

Here, sufficient issues of material fact have been presented for this case to go forward. At trial, in order to determine whether Defendants committed legal malpractice, it will be necessary to have a "trial within a trial" in determining whether Plaintiff would have won her case had it not been for Defendants' alleged malpractice. Defendants will, however, be able to present the affirmative defense of contributory negligence, but not the defense of assumption of the risk.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (#114) as to the issue of legal malpractice and contributory negligence is **DENIED** and is **GRANTED** as to the issue of assumption of the risk.

/ / /

/ / /

/ / /

/ / /

/ / /

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (#115) as to the issue of legal malpractice is **DENIED.**

This 20th day of December, 2005.

Edward C. Reed.

UNITED STATES DISTRICT JUDGE